PSS:SDD/WDS
F.#2011R02099

M12-0295

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X        **TO BE FILED UNDER SEAL**

UNITED STATES OF AMERICA                 AFFIDAVIT AND
                                         COMPLAINT IN SUPPORT OF
     - against -                         ARREST WARRANT

VOLODYMYR PONOMARENKO,                   (T. 50, U.S.C., §
                                         1705(c), T. 18, U.S.C. §
                Defendant.               2, T. 15, C.F.R., §
                                         764.2)
- - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

          ERIC SILVERMAN, being duly sworn, deposes and says that
he is a Special Agent with the United States Department of
Homeland Security, Homeland Security Investigations ("HSI"), duly
appointed according to law and acting as such.

          Upon information and belief, in or about and between
December 10, 2011 and December 18, 2011, within the Eastern
District of New York and elsewhere, the defendant VOLODYMYR
PONOMARENKO, together with others, did willfully attempt to
export from the United States to Ukraine items under the
jurisdiction of the United States Department of Commerce, to wit:
a Trijicon TR22 and two Sightron SIII SS 6-24X50 LRMOA, all high-
powered rifle scopes, without first having obtained the required

licenses from the United States Department of Commerce, in violation of Title 50, United States Code, Section 1705(c).

(Title 50, United States Code, Section 1705(c), Title 18, U.S.C. § 2, Title 15, C.F.R., § 764.2).

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.   I have been a Special Agent with HSI since 2005.  I am currently assigned to the Counter-Proliferation Investigations section of the Office of the Special-Agent-in-Charge, New York.  My duties include the investigation and prosecution of violations pertaining to the export of licensable commodities, such as munitions.  As a Special Agent with HSI, I have participated in numerous investigations into violations of the United States export control laws, during the course of which I have conducted or participated in surveillance, execution of search warrants, debriefings of informants, and reviews of documents and taped conversations.

---

[1] The information contained in this affidavit is based upon my conversations with various law enforcement agents, and others, as well as my personal observations and knowledge.  Where my statements and statements of others are related herein, they are related in substance and in part.  Because the purpose of this affidavit is merely to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

3

I.   Applicable Export Regulations

    2.   Based on my training and experience, I know that
the export of items affecting the national security of the United
States is governed by two independent regulatory schemes.  First,
the export of defense related articles is regulated by the Arms
Export Control Act, Title 22, United States Code, Section 2778.
Section 2778(a) authorizes the President of the United States to
control the import and export of defense articles and to
establish a United States Munitions List ("USML"), which
identifies and defines the defense articles subject to these
controls.  Section 2778(b) provides that any person engaged in
the business of manufacturing or exporting any defense articles
shall register with the government.  Section 2778(c) establishes
criminal penalties for any willful violations of Section 2778 or
any rule or regulation promulgated thereunder.

    3.   The United States Department of State ("the State
Department") implemented these statutory provisions by adopting
the International Traffic in Arms Regulations ("ITAR"), Title 22,
Code of Federal Regulations, Parts 120-130.  These regulations
established the USML and require a valid export license for the
export of any items on the list.

    4.   Second, the export of so-called "commerce
controlled" items is regulated by the United States Department of
Commerce ("DOC").  Under the International Emergency Economic

4

Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 et seq., the President of the United States was granted the authority to deal with unusual and extraordinary threats to the national security, foreign policy, and economy of the United States.  Under IEEPA, the President could declare a national emergency through Executive Orders that had the full force and effect of law.

5.   On August 17, 2001, under the authority of IEEPA, the President issued Executive Order 13222, which declared a national emergency with respect to the unrestricted access of foreign parties to United States goods and technologies and extended the Export Administration Regulations (the "EAR"), 15 C.F.R. §§ 730-774.  Through the EAR, the DOC imposed license or other requirements before an item subject to the EAR could be lawfully exported from the United States or lawfully re-exported from another country.  These items are listed on the commerce control list, or "CCL," published at 15 C.F.R. § 774.  The President issued annual Executive Notices extending the national emergency declared in Executive Order 13222 from the time period covered by that Executive Order through the time of this affidavit.  See 76 Fed. Reg. 50,661 (Aug. 16, 2011).

6.   Pursuant to its authority derived from IEEPA, the DOC reviewed and controlled the export of certain goods and technology from the United States to foreign countries.  In particular, the DOC placed restrictions on the export of goods

and technology that it determined could make a significant
contribution to the military potential or nuclear proliferation
of other nations or that could be detrimental to the foreign
policy or national security of the United States.  Under IEEPA
and the EAR, it is a crime to willfully export, or attempt or
conspire to export from the United States, any item subject to
the EAR for which a license was required without first obtaining
the license from the DOC.  50 U.S.C. § 1705(c), 15 C.F.R.
§ 764.2.

II.   The Investigation

        7.   HSI, along with the United States Department of
Defense and United States Department of Commerce, is conducting
an investigation into the activities of VOLODYMYR PONOMARENKO and
others for exporting and attempting to export commerce controlled
and USML defense articles from the United States to Ukraine,
without possessing the requisite export licenses.

        8.   In connection with this investigation, on or about
December 10, 2011, officers with United States Customs and Border
Protection ("CBP") searched several packages at John F. Kennedy
International Airport ("JFK") that were being shipped to Ukraine
as part of a shipment of consolidated parcels being sent by
Meest-America Inc. ("Meest"), a freight forwarder located in
(among other places) Elizabeth, New Jersey.  These packages were
found to contain (1) a MoroVision Thermal-Eye 4000B - Thermal

Imaging camera ("MoroVision"); (2) a Night Optics TS-640-3X, a night vision rifle scope; (3) a Night Optics D-740-3AGM, also a night vision rifle scope; and (4) a Trijicon TR22, a high-powered rifle scope. A fifth package, which was part of a similar shipment from Meest to Ukraine, was seized by CBP Officers at JFK on December 18, 2011, and found to contain two Sightron SIII SS 6-24X50 LRMOA high-powered rifle scopes (the "Sightron Scopes") (collectively, the "Seized Packages").

9.     The DOC has determined that the Trijicon TR22 and the Sightron Scopes found in the Seized Packages are under the licensing jurisdiction of the DOC and would require a license for export to Ukraine. The DOC has advised, however, that no licenses had been obtained by anyone for those items.

10.    In addition, the Department of State's Directorate of Defense Trade Controls ("DDTC") has issued initial license determinations concluding that the Night Optics rifle scopes found in the Seized Packages are USML defense articles, as defined under category XII(c), and therefore require a license to be exported outside of the United States. See 22 C.F.R. § 121.1. The DDTC has advised, however, that no licenses had been obtained by anyone for these items.

11.    Each of the Seized Packages was addressed to VOLODYMYR PONOMARENKO (or some variation of that name)[2] at 641

_____

[2] Variations included "Vladimir Ponomarenko" and "Vlad Ponomaren." For ease of reference, this affidavit will refer

Dowd Avenue, Elizabeth, New Jersey.  That address, as noted, is
the location of the office of Meest in Elizabeth, New Jersey.  A
representative of Meest indicated that Meest had been given
instructions to direct the Seized Packages to an address in
Ukraine.  The Meest representative also advised that in the past,
it has received directions to forward all packages addressed to
VOLODYMYR PONOMARENKO to Ukraine.  Based on a review of law
enforcement databases, including prior visa applications,
VOLODYMYR PONOMARENKO is a citizen of Ukraine, residing at
Vorontsova Str. 77 Ap.186, Dnipropetrovsk, Ukraine.

        12.  The Seized Package containing the unlicensed
Trijicon TR22 contained an invoice from "Hidden Treasures," a
domestic dealer authorized to sell, among other things, the
Trijicon TR22.  Notably, the invoice from Hidden Treasures states
that "[m]any of the products that we sell are subject to local,
state, federal and export controls . . . .  Certain products in
particular are subject to export controls administered by the
U.S. Government and may require you, as the exporter, to obtain a
license before that item(s) can be exported from the United
States.  Diversion is contrary to Federal law and is prohibited."

        13.  Additionally, the Seized Package containing the
unlicensed Night Optics D-740-3AGM night vision rifle scope
contained an invoice from GSD Ltd. ("GSD"), a domestic dealer

_____

only to Volodymyr Ponomarenko.

authorized to sell, among other things, the Night Optics D-740-3AGM. The invoice from GSD states that "[e]xport of this product is regulated by the US Department of State in accordance with guidelines of International Traffic in Arms Regulations (ITAR) per Title 22, Code of Federal Regulations, Parts 121-128."

14. A review of records obtained from GSD revealed that the e-mail address "rubbi50@gmail.com" was provided by the purchaser to GSD as the e-mail address to which the invoice for the Night Optics D-740-3AGM should be sent. A subpoena to Google revealed that the e-mail address "rubbi50@gmail.com" is subscribed to by "Vladimir Ponomarenko," located at "Prospect Vrontsova 77/186," "Dnepropetrovsk," Ukraine.

15. The Seized Packages containing the unlicensed Night Optics TS-640-3X, a USML defense article, and the commerce controlled Sightron Scopes were sent by JOHN DOE, a United States citizen whose identity is known to the government. Based on documents contained in the shipment, the seller of the Seized Package containing the Night Optics TS-640-3X was Bestprice4Uperiod, which is a domestic dealer of export controlled items. Records obtained by subpoena from Bestprice4Uperiod indicate that an e-mail was sent from JOHN DOE to Bestprice4Uperiod that contained two attachments; a Bestprice4Uperiod ITAR Compliance Acknowledgment and an Export Statement of Understanding with Night Optics USA, Inc. Both

forms were completed and signed by "V Ponomarenko" with an address of 284 Parker Ave., Clifton, New Jersey, 07011.  The ITAR Compliance Acknowledgment contained the statement, "I am a citizen of the United States of America."  The Export Statement of Understanding with Night Optics USA, Inc. contained a statement, "I am a legal citizen of the United States of America."  On both forms, the "Yes" response was checked.  The ITAR Compliance Acknowledgment references "Purchase Order Number: 121NOU," the same purchase order number listed on invoice number 14266, provided by Night Optics USA.

16.  On September 27, 2011, an e-mail was sent from Bestprice4Uperiod to JOHN DOE stating, "Sorry for the extra info I need but I just need proof of U.S. Citizenship for my supplier to ship the thermal.  Basically just one extra step of info upon the forms you sent.  Thanks so much!"  On September 28, 2011, an e-mail was sent from JOHN DOE to Bestprice4Uperiod, which stated, "Vladimir replied he is on vacation and didn't have a chance to scan the documents.  I don't want a delay on this, so I am sending you the copy of my passport. So go ahead and ship the unit to my address.  I will send you the signed forms as well if necessary.  Thanks!"  Attached to the e-mail was a copy of JOHN DOE's U.S. passport.

17.  On September 29, 2011, JOHN DOE sent an e-mail to Bestprice4Uperiod which stated, "Hello, Please, see attached

forms.  Sorry for the delay.  Please, advise when the unit can be
shipped."  The e-mail contained two attachments: (1) a
Bestprice4Uperiod ITAR Compliance Acknowledgment; and (2) an
Export Statement of Understanding With Night Optics USA, Inc.
Both forms were completed and signed by JOHN DOE, reflecting JOHN
DOE's home address in the United States.  The ITAR Compliance
Acknowledgment references "Purchase Order Number: 121NOU" -- the
same purchase order number listed on invoice number 14266,
provided by Night Optics USA.  As noted, the purchase order and
invoice numbers pertain to the sale of the Night Optics TS-640 3X
Thermal Weapon Sight, which was seized at JFK.

        18.  In connection with this investigation, HSI
performed an open source internet search for the presence of the
email address "rubbi50@gmail.com."  HSI determined that the email
address rubbi50@gmail.com is associated with a username "rubbia"
on the web forum "talks.guns.ru," an open internet forum that
facilitates the discussion of arms and related items among forum
members.  On April 5, 2011, in the talks.guns.ru forum, an
individual with the username rubbia provided rubbi50@gmail.com as
his email address, and signed it "Vladimir."  Then, on April 15,
2011, the individual with the username rubbia posted a message on
the talks.guns.ru forum stating, in sum and substance, based on a
draft translation from the original Russian: "I want to warn that

11

when ordering goods from the U.S. to Russia 30 percent commission plus postage . . . ."

WHEREFORE, your deponent respectfully requests that an arrest warrant issue for the defendant VOLODYMYR PONOMARENKO so that he may be dealt with according to law.  Due to the risk of flight of the defendant and/or the destruction of evidence, I further request that the arrest warrant be issued under seal.

ERIC SILVERMAN
Special Agent
Homeland Security Investigations

Sworn to before me this
23 day of March, 2012

HONORAI    S/Azrack
UNITED                    JDGE
EASTER                    RK